Thank you, Your Honors. May it please the Court. The District Court erred when it turned a discovery protective order from a lawsuit that settled in 2017, an order that was to facilitate discovery in that lawsuit, into a shield for discovery in a separate lawsuit in state court in 2023. That's why we're here, Your Honors, is because of misinterpretation of that protective order. I'd like to begin by stepping back in time to 2017 and what was going on without Ocwen's knowledge. In 2017, Mr. Boyd knew he was engaging in conduct outside of the Fisher protective order. He was using Ocwen's information for a purpose unrelated to Fisher. Fisher settled in May of 2019. Paragraph 4 of the protective order only allowed him to use Ocwen's confidential information for that lawsuit, but later in 2017, he disclosed that information to the Treasury Department's Inspector General and did it for the benefit of new clients pursuing a new lawsuit. Your Honor, that is undisputed in the record, but again, was happening without Ocwen's knowledge. At record page 39587, Mr. Boyd wrote on August 10, 2017, that his conduct was going to save a ton of time and money for his new clients. At record page 39594, August 21, 2017, Mr. Boyd contacted the Treasury Department's Inspector General and requested that they amend and change their protective order, or sorry, subpoena, and give him a new subpoena so he could share even more information. Again, not being told to Ocwen that Mr. Boyd was taking Ocwen's information to use it for the benefit of his new clients. And later in August of 2017, Mr. Boyd went a step further. He contacted the federal district court in his sealed ex parte filings, telling the federal judge that he was asking for relief from the Fisher protective orders so that he could engage in this conduct. That's at ECF 621, 623, and 624 of the Fisher case, the Fisher versus Ocwen case. Your Honors, many of those ECF sites don't even appear on the docket. Ocwen had no idea for years that Mr. Boyd was engaging in this conduct with Ocwen's information outside of the Fisher case and outside of what the protective order allowed. When someone fails to comply with an order or a contract, a basic contract law says you can't come into court to enforce it against someone else. That's what Mr. Boyd tried to do here. And by allowing it, that's what the district court erred. Mr. Boyd could not enforce the Fisher protective orders against Ocwen to stop discovery after he got caught doing the behavior he did. To be clear, we're in Texas state court on appeal to the federal court of appeals. Never seen this before, Your Honors. We're in state court because following this court's precedent in the Kokomon case, the U.S. Supreme Court, when you have a breach of a settlement agreement, we're talking about a state law cause of action. The proper jurisdiction was to sue in state court, which is what Ocwen did when it learned that Mr. Boyd breached the Fisher settlement agreement and fraudulently induced the Fisher settlement agreement for which Mr. Boyd received millions of dollars, part of which included a covenant that he was not going to sue Ocwen again for the same conduct. But it turns out, years later, we found out that's exactly what he did. He sued Ocwen for the same conduct after getting paid millions of dollars. We filed a lawsuit in state court. Had no idea that there was a violation of the protective orders at the time we filed the lawsuit. Mr. Boyd then removed the case to federal court. Judge McZahn correctly concluded that he did not have jurisdiction. That should have been the end of his orders related to our state court lawsuit. When the case was remanded back to state court, it was up to the state judge to decide whether discovery was appropriate or not. Judge Thompson in the state court held that the discovery Ocwen is seeking is relevant to Mr. Boyd's fraud inducement, his breach of contract, and now he's also arguing he's immune as an attorney for what he did. And under Texas law, one of the things for attorney immunity essentially asks is his conduct unbecoming of a lawyer. Taking information under a protective order from one case to use it for a different case meets that standard. Your Honor, you're spending a lot of time on the underlying facts. Maybe that's a good idea, maybe it isn't, I'm not sure. But as I understand it, the question before us is whether the protected documents should be produced back to Ocwen, which is the entity that originally produced it. I haven't heard you say anything about that. Yes, and that's exactly where I'm about to go to, Your Honor, because we're talking about the protective order. The only argument for the federal court to have jurisdiction is construing the protective order and what it means. That's it. Judge Lezan correctly concluded he did not have jurisdiction to go further. So the question is, does that protective order prevent disclosure of documents back to the party that produced them? Think about the order and consistency. Paragraph 4 says it could be used for issues arising out of the Fisher case. A lawsuit over breach of contract is arising out of the Fisher case, paragraph 4. So that requirement is met. So then we end up in this paragraph 5 discussion about who can receive protected information. Mr. Boyden's argument is inconsistent. It's inconsistent with what happened in the Fisher case, it's inconsistent with what he's done, and it makes no sense. If you cannot disclose information back to the party who produced them, think about the underlying lawsuit. When Ocwen gave information to Mr. Boyden, he would not be able to talk about those documents in front of Ocwen. He had to disclose them back to Ocwen in his filings with the court, in the depositions, in his discussions related to that case. But Judge Mazant based his decision on the limited list of what was defined as qualified persons, and Ocwen was not included in that. Yes, Your Honor, and that's where he made the error. Qualified persons necessarily includes the parties to the case. Ocwen was a receiving party throughout the case. It received its own information back from Mr. Boyden during the lawsuit, and it necessarily had to, otherwise a protective order would have been obstructing the case when its purpose was to facilitate exchange of information. I'll also point out that in the federal court litigation, Ocwen, at Mr. Boyden's request, had to reproduce information from Fisher. Mr. Boyden did not object. Ocwen had to subpoena Mr. Boyden's former co-counsel, Fishin Richardson, for Ocwen information because it was years ago. We didn't have it all anymore. We were trying to find it wherever we could. When Mr. Boyden objected to the subpoena to Fishin Richardson, his only argument was work product. He did not make the argument he's making here that a protective order prohibited the parties to the lawsuit from discussing or receiving their own information. Well, that certainly makes sense as a matter of what might intuitively seem right, but looking at paragraph five, there are six listed categories of the defined term qualified persons, and I'm sure you acknowledge that Ocwen is not, strictly speaking, included in any of those six. Your Honor, I don't agree with that because Ocwen was one of the receiving parties. Which of the six, paragraphs A through F, which of those six does Ocwen fall within? Your Honor, I believe it's paragraph A. Ocwen was a receiving party throughout the case. It received information throughout the case. There's nothing in that order that says a party, as soon as you've given your documents to one person, you're now prevented from ever receiving those documents back. We were a receiving party. That is the consistent interpretation that was used during the lawsuit and received after the lawsuit. So, Your Honor, let's put it in the context because the facts really do matter here. Boyd's new co-counsel and his new clients and the Treasury Department Inspector General are not on that list. They're not on A through F. Boyd took documents, and it's undisputed he did, and gave it to these parties. When he's done that, he has to be subject to scrutiny for giving documents outside the protective order. We were outside the protective order that moment. Having breached it, he cannot come back in court and say, but strictly enforce it against the party I used it against. He's taking completely inconsistent positions, and Your Honor, I do agree with the premise of your last question. It makes no sense. Well, was your client a receiving party, or was it a designated party? It was both. It was both, Your Honor. My client designated documents, it received documents, and there's nothing in that order that says that just because there's nothing in that order that says that for every document you go through and categorize which ways it wouldn't go. That order doesn't say that. And Your Honor, look at paragraph 15. Paragraph 15 unequivocally says at the end of the case, a receiving party is supposed to return documents or destroy them. There's nothing. If you're allowed to return or destroy documents, there's nothing in there that can be read to say you're permitted from telling somebody what you didn't return or destroy. What Mr. Boyd is doing is engaging in an ultra-technical reading of the contract to try to get out of trouble after having failed to comply with it for years. That's what he's trying to do here. Your Honor, as a matter of law, the protective order, any order, any contract needs to be read in context of what was intended to be covered. It must need to be read to make sense. They should be applied consistently, and there's nothing that Mr. Boyd is arguing that is consistent with the context of this agreement, the purposes of this agreement, or consistency. I just have a practical question. Yes, Your Honor. Why can't you get in state court, from all the third parties and the plaintiffs and whoever, everything that was produced to them by, or given to them by Boyd that has Aquan origins? Your Honor, we have tried that, and actually this is in the record. The party that received information that we know about, we actually, it's very possible he did more. We don't know what else, but we know about the inspector general from the treasury department, and we put in the communication in the record. I'm going to try to find the page. Well, that's inspector general has shut down. It was the special. Okay, let me go to my second question, the follow-up question. If Boyd produces back everything back to Aquan that he got in the Fisher lawsuit, how does that help you prove that he's given something outside of the Fisher lawsuit to somebody else? All it proves is he's still got it in his possession. We've asked specifically, all we're asking for is what you've disposed to the third parties. We're trying to find what information he misused in the state case he's being sued for fraud and breach of contract over the Fisher settlement, and what we've learned six or seven years after the fact is he not only engaged in fraud and breach of contract, he did it by violating the protective order and using my client's own documents against him. I get that. You're not following my point. How does him reproducing back every, how many, it's a lot of documents, 23 million, I don't know, a lot. How does him producing it back to Aquan help Aquan prove that he has since distributed it to people that are not protected, they're outside the protective order? Yes, Your Honor, if we get the documents back, then we know what he actually used, what it is. We don't, you know what he has, you don't know that he used it. That's what we've asked him for. We don't want what he has, we want what he used and disclosed. Okay. That's what our request was. And once we have that, that is a need for us to continue doing discovery to find what else he did. So if we know. I got it. Yes, thank you. Your Honor, I'll save the rest of my time. Yes, you've saved time for about, thank you, Mr. Hastings, Ms. Leboeuf. Okay, please support it. My name is Nicole Leboeuf and I'm here for the appellees, and void and void necessities. The issue that I will address is that the plain language interpretation of the Fisher protective order by the Eastern District Court was correct. The designating party and their counsel, just like parties generally are not qualified persons under the protective order. Appellants did not plead ambiguity and both parties agree that this court should look to the plain text of the protective order. Let's assume that that's true. That limitation on disclosure, though, would have only been valid while the Fisher dispute was still pending. No, the lower court has the ongoing jurisdiction to enforce that protective order and the state court deferred to the federal court in determining whether it ought. And I would point out to this court that's in both parties' briefs that often the appellant's position to this court is 180 degrees from what they argued during the Fisher case was the list of qualified persons. In 2015, the counsel for the relators, Mr. Fisher and Mr. Bullock, on this very same protective order filed a motion with Judge Hussant, same judge, asking that the parties be included as qualified persons and claiming that that was an omission and an oversight. At that time, and it's before this court in the record, Appellant objected on three bases. One, they said the party stipulated to this order so they're bound by it. Two, they said it's been nine months since it issued and we relied on them and so they should not be changed. And three, parties, they said, are bound by the terms of the protective order and the case law that they cited to Judge Hussant when they said no, parties are not on that list and should not be included is in the same case law they've raised to this court, which is Moore v. Ford Motor Company, another case with a 10-year-old protective order that was properly enforced even though the underlying case was overruled. And so they cited to Orthoflex when they were arguing in 2015 and 16, Orthoflex was cited by Moore. It's the same arguments. You look to the four cases in the protective order. In 2015 and 16, this same judge agreed with Auckland, the appellants, that we should interpret the protective order according to its plain text and the parties are not there. And now 10 years later, the court must have been astonished to find Auckland back in front of it saying, as they just said to you, the parties were always qualified persons under that protective order. That's a matter, Your Honour, of judicial estoppel, but it also belies their arguments to this court that Judge Mazzan didn't show his work and they don't know how he arrived at these determinations when actually they do because they made these arguments. If we look to the protective order, the receiving party is the party who did not mark the information as protected and to whom it's being disclosed. The party making the designations is the designating party. And in this case, the appellants have argued that they made the designations of confidential information, therefore they are not included. That paragraph 5 refers to persons who are qualified as counsel in that action, the Fisher action for the receiving party, their employees, witnesses at depositions, hearings and trials. So you could use that information at depositions and hearings and trial and you could also, under paragraph 8, which acknowledges the treatment by the parties during depositions, hearings and trial of protected information. Under the plaintiffs of the protective order, the lower court correctly concluded that a receiving party's counsel, in this case the appellees, may not disclose or return protected information even to the party who produced it, with the only exception that the parties that agreed to being at paragraph 15. And the counsel for the designating party might get the documents back at the end of the case or they may be destroyed or the counsel for the receiving party may retain work product. Notably, no argument was made to the lower court that the appellees, Mr. Boyd and his firm, wrongfully retained any documents under the protective order. And you will see that in both orders that have been appealed by Oakland to you, the May 2024 order and the August 2024 order, in which Judge Mazzant says, if you are to argue that the appellees wrongfully retained information, you have to move this court because I have continuing jurisdiction. Since you have not made that motion, I will assume that the appellees correctly retained the information they retained. Notwithstanding that fact, and it's in the record on the March 13, 2024 hearing transcript, I've been told Judge Mazzant, when this issue first came up, as we came into the briefing, that ultimately resulted in the order we're here for today, that they had made no motion. Although they acknowledged that it would be under his jurisdiction if they were to make such a motion. You acknowledge, I assume, that paragraph 15 has to be read along with and somehow reconciled with paragraph 5. Is that right? We can't just read one or the other. That's right. All right, and so paragraph 15 says, the counsel for the receiving party shall destroy or return the protected information to the counsel for the designated party within 90 days. Shall do that. It's a requirement. Right, so that, and I agree, it's a requirement and they could have. There was no return. There was an option to destroy and there was an option to retain work product. Now the work product issue is not before this court because Judge Mazzant said that privilege will be decided by the state court, not by me. That's not my jurisdiction. Right, and that's a separate part of paragraph 15. Yes, it's a separate part of paragraph 15, but I raise it because there were alternatives to saying here are all of your documents back in that 90-day period. So what is your position? Did your client retain or destroy or return? We know we didn't return because that's why we're here to dispute. Right. So did they retain or destroy? His co-counsel did both. So the 23 million were stored with a third party retained by Fish and Richardson. The appellees here, Mr. Boyd and his firm, had access to them. The record reflects, and it's in the privilege law that was submitted to the court, that it is a matter of hundreds of documents, about 700 total, that are actually retained under the work product exception. That's what was retained. Now, Auckland is not without a remedy, and the fact that their position now, that the way that this protective order is written is unfavorable to them, does not make it unreasonable. The remedy, if indeed that's what they claim, is that wrongful, that documents were wrongfully withheld is to go back to the court and seek enforcement of the protective order, which they have not done. And in fact, as they've told this court, they have documents that they marked as protected information from the Fisher case themselves, because in the ICARE-QPAN litigation, which they have not brought the complaint to you, it goes to trial on February 2nd, 2026, they asked the same judge, Judge Mazan, can we, because we're constrained by the protective order, we can't disclose our own protected information, we can't produce it without an order from you in this case saying we can produce our own information we've designated as EI, and they've put that order before you too. This court ruled in matter of PFO Global Inc., which is before this court in 2022, one of the cases cited by the appellants, that very point that I raised, which is the fact that a party now finds a protective order to be unfavorable, doesn't mean it's unreasonable. In fact, operant's knowledge that the plain text means they can't have these documents is exemplified by the fact that they did ask the lower court to modify the protective order. What they said is, it's just like we did in ICARE where we said, please can we produce our protected information and you entered an order, we want you to make a modification here. Judge Muzan declined to do so because he said, I did that in the ICARE case because it was jointly requested, but I'm not going to do it here because there is no joint request. I do want to note also that it is a glaring absence from the record that appellants tell you the ICARE key 10 was filed in violation of the Fisher settlement. That's the genesis of our need to have these documents. But they have not brought that complaint to you. And there's a reason for that. There are no claims in the ICARE complaint that pertain to the covered conduct, the settled conduct in the Fisher cases. That covered conduct was for Ockwin submitting or causing the submission of false or fraudulent claims in violation of the False Claims Act from April 2009 through February of 2017. There are 1,100 defendants in that ICARE case and Ockwin itself formed a trial in February. Those 1,100 were not part of the underlying Fisher cases, nor were the relators. And for that reason, under Federal Rule of Evidence 201, appellees moved this court to take judicial notice of the complaint in the ICARE key 10 at Clause 419 CD 5.4 ALN in order to ascertain the lack of truthfulness in this underlying assumption that there was wrongful retention and misuse of information from Fisher in bringing this later case. Now, although I've heard some arguments about jurisdiction and I only want to briefly address them, I do not believe that's before this court. And I would note that in an appellant's brief at the Roman numeral 11, they acknowledge the jurisdiction of both Judge Mazzan and this court. Jurisdiction is always before us. Not only our jurisdiction, but the district courts. So it is not correct to say that that's not before us. Okay, Judge. Thank you. And I'll spend a little bit more time on it. And that is that both sides brought to Judge Mazzan their briefing on this protective order and enforcement of the protective order. And counsel for appellants, in the transcript of that initial hearing, which is at 2440580.42282, said Judge Thompson's question to this court is for clarification of the Fisher protective order, which is why we're here and what we are seeking. So they gave this and acknowledged the jurisdiction. And at the Roman numeral 11 of their brief, what they tell this court is that Judge Mazzan had jurisdiction and has jurisdiction because of the language in the protective order retaining the jurisdiction for him for its enforcement. Now, Ms. Hastings said that Judge Mazzan took the position that he did not have jurisdiction. No. That's what I heard her say. I guess I misunderstood. I think that was a misunderstanding. The only thing he said that he didn't have jurisdiction to decide was the work product privilege. He said in both the May and the August orders that are before this court, the May 28, 2024 order at 24405811657, and then the August order, which is 244508011664, he says, yes, I do have jurisdiction because it was retained in the protective order for the enforcement of the protective order, which is why he has said repeatedly, listen, if you think the appellee shouldn't have a document, that comes to me. And they said, yes, it does. But they even acknowledged to this court in their briefing they haven't brought that. Well, let me ask about that. Let's say we're 100 days past the Fisher settlement, the judgment, and the 90 days to destroy or return has passed. Could Aquin have gone to Chief Judge Mazzan and said, we don't think they've destroyed all the documents. They haven't returned any to us. We want all our documents back. They could have. And what allows them to say that? Well, they would have asked him to enforce because he retained jurisdiction to enforce the protective order. Now they just go and say, we want all our documents back. Why can't they get all their documents back? They could ask the court whether under paragraph 15 documents had been retained or destroyed, or there was work product retained. And in fact, they have that answer because they have the privilege law. And in their brief, they tell you everything that was retained. And they tell you that it was handed to SIGCHR in response to a government subpoena. But yes, they could have asked Judge Mazzan to say, to find out. So Judge Mazzan could give it back to him if they asked for it under that paragraph, give me everything back. Now they're saying, we want everything back. But you're saying, no, they're not a designated person, so they can't get it back. I see a circular problem here. He could have, they could have asked the court to confirm whether they had been returned or destroyed, or retained his work product. That they could have done. And then there would need to be a determination of the work product privilege to determine, is anything that you retained under that work product exception subject to work product? And Judge Mazzan has said, not for me. You can take that back to the state court on the work product exception. The trial court itself deferred to the federal court on this issue. Going back directly to the jurisdictional argument. And that is confirmed by appellants themselves who read her transcript into the record. And the transcript is here, before this court, which is where the judge said, I've already told you, I'm not going to violate the federal order that says Mazzan gets to control who sees them and when and how. If I have a protective order from him that says he's the one that can release that information, I'm not doing it. Now, once again, whether appellees have retained his immaterial, both parties have agreed to this court that this requires a plain text interpretation of the protective order. As Ogwin has argued, and it's successfully obtained in order, the parties are not there and not included. And as they've argued to this court, they're not. The receiving parties counsel for these documents. The appellees ask this court to affirm the trial court's order, deeming the listed documents from the privilege lock to be protected information that is not to be disclosed to appellants under the plain text language and to find that the trial court's order was not purely erroneous under the Moore case. Are there any questions? Thank you, Ms. LaBeouf. Mr. Hastings for a vote. Thank you, Your Honors. Judge Richman, your hypothetical question about the 100 days I think gets right to the heart of the issue and the problem. Ogwin wants the documents because he wants to continue investigating what happened. But Mr. Boyd will not return the documents because he's claiming they're work products. That was the argument he presented to Judge Mazzant. The argument we're having today was really not Mr. Boyd's argument to Judge Mazzant. Their argument to Judge Mazzant was, Judge, this is our work product. We don't have to return it. Judge Mazzant said, I do not have jurisdiction over work product. He also did not have jurisdiction over whether work product privilege was waived. Instead, those are for the state court. But then Judge Mazzant entered the decision that we're here about, and Mr. Boyd's counsel is defending it based on technicalities or hyper-technical readings that we don't think are consistent with the protected one. The issue is work product, and it's an issue for the state court. As Judge Mazzant said, we have a qualified judge, and there's a qualified appellate court that can rule on it if the judge gets it wrong. Are you saying that the Boyd side says all we've got left is work product, that's all we have? Or are they saying we've got the Ogwin documents other than work product, but we're not required to return those? We don't have his documents. However, we do have Mr. Boyd's deposition transcript. Mr. Boyd's position is some of this is work product. He also says, and he testifies to this under oath, he says, if I reviewed a document and deemed it important enough, it is now my work product. That's the theory he's asserting. And, Your Honor, that is in our filings with Judge Mazzant. It's a short excerpt of his deposition. He says that multiple times. He can transform Ogwin's documents into his work product just by reading them and deeming them important enough. So what should an order, assuming we agreed with you, what would the order say that would not resolve work product? Judge Mazzant's order would say, and there was no dispute over this, the information was protected under an official protective order. It's now for the state court to decide, was it work product? Was work product waived? Or what happened post-Fisher? That's what the order should have been. We were objecting to being in Judge Mazzant's court at all on this issue because no one, Ogwin, never disputed that we thought this information was protected. I thought you were asking us to order Boyd to return Ogwin's documents. Your Honor, we were doing discovery in the state court, and we do want the documents returned, and it's the state court discovery. As far as Judge Mazzant goes, we don't believe he should have been involved at all. But if he was involved at all, his order should have said, this was protected information. It should have been returned years ago. Everything else is for the state court to address. Your Honor, there's a reason Ogwin didn't ask for that relief years ago. We didn't know this happened. Did you ask Judge Mazzant now, in this proceeding, order the return of our documents? Your Honor, we objected to jurisdiction at all. We told him we said there's no dispute this is protected information. The problem we ran into is in Judge Mazzant's court, paragraph 15 talks about an option to destroy documents. We don't want documents destroyed because it's relevant to the court. Did you ask Judge Mazzant to say, order return of all of our documents? Did you or not? Your Honor, we may have been able to ask him more directly, but we believe we've asked him, and the compliance of the request was we want our documents back. We actually served these discovery requests in Judge Mazzant's court, but then he remanded the case and said I don't have jurisdiction to address your discovery dispute. That's how we ended up in court. That was on the removal piece. Now we're here on the protective order. What arguments did you make regarding the protective order? Did you say we want our documents back? We've always said that, Your Honor, yes. We've always said that. We want them back so that the parties have the evidence relevant to the case. So our order, if we agree with you, should simply say we order Boyd to return all Aquin documents? Yes. Produced in the Fisher Lawsuit. Yes, and my qualification there, Your Honor, would be not destroyed so that everyone has relevant documents so we can have our state court lawsuit addressed on the merits of a relevant case, but the order to return to go all the way requires is it work product or not? Has work product been waived or not? And Judge Mazzant has said I don't have jurisdiction to answer the full question. And you agree with that? I do agree with that. Okay. So, Your Honor, we believe the correct decision would be to reverse this order from the district court and with instructions that this was protected information from Fisher, whether it was work product or whether work product was waived. Any of those issues have not been appealed. Judge Mazzant, you're right. Those are for state court resolution. Thank you, Your Honor. All right. Thank you, Mr. Hastings. Your case is under submission, and the court will take a recess before hearing the final two cases.